IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES LAWRENCE STEPHENS, III, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. CIV-16-226-JHP-SPS<br>) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of the Social Security Administration,[1] | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## REPORT AND RECOMMNEDATION

The claimant Charles Lawrence Stephens, III, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born September 20, 1952, and was approximately sixty-two years old at the time of the most recent administrative hearing (Tr. 105, 1734). He has a high school education, and has worked as an auto body repairer (Tr. 13, 1747). The claimant alleges that he has been unable to work since January 1, 2003, due to respiratory problems (Tr. 11).

**Procedural History**

On July 24, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied, but the Social Security field office never issued a reconsideration determination. The claimant then later filed applications on December 4, 2013, and the original and 2013 applications were both considered and denied at that time. ALJ Keith J. Allred conducted an administrative hearing and determined that the claimant was disabled according to the Grids on September 20, 2008, but that he was not disabled prior to that date (Tr. 36-46). The Appeals Council then determined that the ALJ had miscalculated the date of disability according to the Grids, and found the claimant disabled September 19, 2007, noting that the ALJ's decision was not based on

the 2013 applications, but the 2006 applications (Tr. 10-11). The Appeals Council did, however, adopt the ALJ's findings and conclusions that the claimant was disabled beginning September 20, 2008, but did not adopt findings pertaining to earlier dates (Tr. 10). The Appeals Council decision thus represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, he determined that the claimant had the severe impairments of chronic obstructive pulmonary disease (COPD), anxiety disorder, affective disorder, social anxiety disorder, alcohol abuse disorder, and hypertension (Tr. 39). At step four, he found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk and sit six hours in an eight-hour workday with normal rest breaks. Additionally, he determined that the claimant was limited to no more than occasional exposure to gases, dusts, and other pulmonary irritants. As to his mental impairments, the ALJ found the claimant could perform the basic mental demands of competitive unskilled work, including the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting, but that he required occasional interaction with authority figures like supervisors, co-workers, and the general public (Tr. 41). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled prior to September 20, 2008, because

there was work he could perform, *e. g.*, assembler, laundry folder, and price marker (Tr. 45). The Appeals Council determined that the claimant had the same severe impairments found by the ALJ and likewise found that the claimant did not meet a listing. The Appeals Council then found that the claimant had the RFC to perform "light exertional and the abilities to remember, understand, and carry out only simple instructions and to only occasionally interact with supervisors, coworkers, and the public" – omitting any reference to the ALJ's limitation regarding environmental limitations (Tr. 13). Additionally, the Appeals Council found the claimant disabled effective September 19, 2007 (the day before he turned fifty-five years old) according to the Grids, but not disabled prior to that date because he could perform the same three jobs identified by the ALJ in his opinion (Tr. 13).

**Review**

The claimant alleges that the ALJ erred in assessing his RFC, including by failing to find he could perform no more than sedentary work and failing to account for a pulmonary function capacity test in the record. The undersigned Magistrate Judge agrees that the Appeals Council erred, and the decision of the Commissioner should therefore be reversed.

The Appeals Council found that the claimant had the severe impairments of COPD, anxiety disorder, affective disorder, social anxiety disorder, alcohol abuse disorder, and hypertension (Tr. 13). The relevant medical evidence as to the claimant's COPD reveals that on June 6, 2006, the claimant was admitted to Huguley Memorial Medical Center with a fever and cough (Tr. 214). He reported progressively worsening

shortness of breath for the past couple of years, as well as a history of smoking four packs per day for nearly forty years (Tr. 214). He was assessed with pneumonia, left lung mass, leukocytosis, and chronic nicotine dependence (Tr. 215). At a follow-up appointment on June 12, 2006, a chest x-ray was remarkable for a hyperinflated lung field and left upper lobe honeycombing localized in the left upper lobe consistent with old bronchiectasis and chronic changes (Tr. 217).

On September 27, 2006, a consultative examination was performed by Dr. Narendra A. Patel, M.D. (Tr. 237). Upon examination, the claimant had normal range of motion and grip strength, and a gait that was slow but normal (Tr. 237-240). Dr. Patel also administered a pulmonary function test (PFT) and ordered a chest x-ray. The chest x-ray revealed coarse linear markings extending from the left suprahilar region with underlying peribronchial cuffing of uncertain chronicity, residual inflammation versus hypoaeration versus scar, and changes of COPD (Tr. 240, 245). The PFT revealed that the claimant performed at only 46.86% of the predicted value, post-bronchodilators (Tr. 241-244). Dr. Patel assessed the claimant with COPD, including a recent history of pneumonia in the left upper lung in June 2006; polystubstance abuse; and hypertension (Tr. 240). Another PFT was conducted on May 4, 2010 through the Veteran's Administration, revealing severe obstructive disease (Tr. 507, 635). This indicated an obstructive pattern and severe impairment, but they could not rule out concomitant restriction or air-trapping, and that there was a significant bronchodilator response, but that diffusion was within normal limits (Tr. 635-636).

A state reviewing physician determined in 2014 that the claimant could perform light work but that he could not tolerate even moderate exposure to fumes, odors, dusts, gases, and poor ventilation, etc. (Tr. 89-90).

The Appeals Council adopted most of the ALJ's findings except with regard to the date of disability (determined to be September 19, 2007 rather than September 20, 2008) (Tr. 11), and as to the limitations regarding pulmonary irritants. Specifically, the Appeals Council adopted the ALJ's findings as to the claimant's statements concerning his subjective complaints, and further adopted the ALJ's findings regarding the claimant's mental impairments. No specific findings were made with regard to the claimant's severe physical impairments, and indeed any reference to them was omitted in the Appeals Council opinion (Tr. 11). Inasmuch as the Appeals Council adopted many of the ALJ's findings, the undersigned Magistrate Judge notes that the ALJ made only a boilerplate finding that the "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the [unidentified] reasons explained in this decision" (Tr. 44). He assigned great weight to the opinions of the state reviewing physician who found the claimant could perform light work, even though he acknowledged that the 2014 opinion did not indicate how long before its issuance it should be considered valid, *i. e.*, it was uninformative with regard to the claimant's abilities prior to his date last insured (Tr. 43). Moreover, the ALJ recited Dr. Patel's report, but provided no analysis about how it did or did not affect the claimant's RFC (Tr. 42).

The claimant contends that when (i) the pulmonary function test from 2006 and (ii) his reported ability to stand for forty-five minutes, walk one to two blocks, sit for several hours, and lift up to forty pounds, are combined, he should have been assessed no more than a sedentary RFC. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Here, the ALJ provided a summary of Dr. Patel's consultative examination, but failed to conduct the proper analysis and did not specify how the exam did or did not support the assigned RFC; the Appeals Council likewise made no mention of it. This was important to do because Dr. Patel's examination was the only one conducted close to the

claimant's date last insured, it specifically related to the claimant's lung functions (which could affect his ability to stand and walk), and it tended to support at least some of the claimant's reports of his abilities at that time. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). Nor did the ALJ or Appeals Council provide any such explanation for why this opinion went ignored. Instead, the ALJ adopted the reviewing physicians' report, which was done eight years following Dr. Patel's examination. Furthermore, as stated above, the Appeals Council failed to even acknowledge the claimant's severe COPD in formulating the assessed RFC.

The undersigned Magistrate Judge also agrees with the claimant that both the ALJ and the Appeals Council erred in formulating the claimant's RFC. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ [or the Appeals Council, in this case] has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the Appeals Council has failed to connect the claimant's RFC to the medical evidence in the record, and

further failed to explain why it favorably endorsed the ALJ's opinion but made no mention of the claimant's proven severe physical impairment in its assigned RFC, the very issue that appears most pertinent to determining whether the onset date was prior to the claimant's date last insured or not.

The undersigned Magistrate Judge acknowledges that, "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling . . . In such cases, it [is] necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." Soc. Sec. Rul. 83-20, 1983 WL 31249, at *2. "[T]he [ALJ] should call on the services of a medical advisor when onset must be inferred." *Id.* at *3. "[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Blea v. Barnhart*, 466 F.3d 903, 912 (10th Cir. 2006). *See also Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous."); *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor."). An ambiguity in the evidence is only an issue if it involves the possibility that the onset date was prior to the expiration of the insured status. *See Hill v. Astrue*, 289 Fed. Appx. 289, 294 (10th Cir. 2008) ("Expert testimony is helpful where the ALJ has determined that the claimant eventually became disabled but there is some

ambiguity about whether the onset of this disability occurred prior to the expiration of the claimant's insured status."), *citing Blea*, 466 F.3d at 913. Such is the case here.

The claimant alleged an onset of disability on January 1, 2003, and his insured status expired on March 31, 2006. Claimant was not found to be disabled until September 19, 2007, at which time his age (55) qualified him for disability under the Grids (Tr. 13). In reaching this decision, neither the ALJ nor the Appeals Council made mention of Soc. Sec. Rul 83-20 in the analysis of the evidence. Here, the complete disregard for this guideline lends credence to the presence of ambiguities, especially in light of the fact that the evidence was not truly considered until at least eight years after the claimant filed for disability. *See Blea*, 466 F.3d at 912-13 ("Mr. Blea's medical record is indisputably incomplete during a pertinent time period, June to December 1998. But, rather than call[ing] on the services of a medical advisor when onset must be inferred, the ALJ made negative inferences against Mr. Blea due to the gap in the medical record. An ALJ may not make negative inferences from an ambiguous record; rather, [he] must call a medical advisor pursuant to [Soc. Sec. Ruling] 83-20."), *citing* Soc. Sec. Rul. 83-20, 1983 WL 31249, at *3 and *Reid*, 71 F.3d at 374. The medical evidence suggests that the claimant's conditions were present prior to the claimant's date last insured and may not have been properly accounted for in any RFC assessment. "[W]ith respect to the onset date of a disability . . . an ALJ 'may not make negative inferences from an ambiguous record; rather, it must call a medical advisor pursuant to SSR 83-20." *Bigpond v. Astrue*, 280 Fed. Appx. 716, 717-18 (10th Cir. 2008) ("[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence

concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions.'"), *quoting Blea*, 466 F.3d at 912-13. Thus, it appears the ALJ should have called upon a medical advisor to infer the onset of the claimant's disability. *See Blea*, 466 F.3d at 912 ("[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions."). *See also Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.").

Finally, the undersigned Magistrate Judge notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). In light of the ALJ's use of boilerplate language in evaluating credibility in the first instance in this case, the undersigned Magistrate finds that remand for proper analysis under the new guidance would likewise be advisable here.

Because neither the Appeals Council nor the ALJ properly assessed the evidence in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ. On remand, the ALJ should properly assess the evidence in the record, then consider calling a medical advisor regarding the claimant's onset of disability, to appropriately re-determine if the claimant's date of disability is actually prior to September 19, 2007.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 22nd day of August, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**